RECEIVED
OCT 24 2012
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JESSE RAMIREZ** | DOCKET NO. 12-CV-727; SEC. P |
| **VERSUS** | JUDGE TRIMBLE |
| **CAPT. CARTRETTE, ET AL.** | MAGISTRATE JUDGE KIRK |

### REPORT AND RECOMMENDATION

*Pro se* plaintiff Jesse Ramirez filed the instant civil rights complaint pursuant to <u>Bidens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>[1]. Plaintiff was granted leave to proceed in forma pampers on July 24, 2012. Ramirez is an inmate in the custody of the United States Bureau of Prisons, and he is presently incarcerated at United States Penitentiary (U.S.P.) Big Sandy in Inez, Kentucky. He filed suit while he was incarcerated at U.S.P. Pollock. He names as defendants Captain Cartrette, Assistant Warden Ma'at, Assistant Warden Bowe, Ashe Carlson, and Warden Martinez. He claims that his constitutional rights secured by the First Amendment and Eighth Amendment were denied.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

---

[1] In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971), the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 U.S.C.A. § 1983.

### *Facts Alleged*

Plaintiff alleges that on March 16, 2012, Defendants Bowe, Ma'at, Cartrette, and Carlson were making rounds in the special housing unit (SHU). While Plaintiff was being escorted to the recreation area of the SHU, he stopped Captain Cartrette to complain that neither Plaintiff, nor many other inmates, had been to the barber shop in a while - some as long as thirty days. Plaintiff went on to state, in front of other officers and inmates, that BOP regulations mandate that they receive haircuts. The captain told Plaintiff that he would discuss the issue with him at another time, as that was neither the time nor place to do so. [Doc. #1, p.2]

Approximately ten minutes later, Capt. Cartrette went up to Plaintiff and "began to berate [Plaintiff] in front of fellow inmates and staff." The captain told Plaintiff that he was not a lawyer and could not raise issues on behalf of other inmates. Plaintiff admits that he laughed at the captain and asked if "he was serious." [Doc. #1, p.2] Plaintiff went on to tell the captain that he was incorrect in his understanding of the law and that Plaintiff had a first amendment right to help any inmate he chooses, and the inmate has a constitutional right to Plaintiff's help. The captain told Plaintiff that he was incorrect, and that Plaintiff's assistance to other inmates constituted a "group demonstration." Plaintiff went on to argue with the captain,

2

stating to the Captain that he did not know what he was talking about. Plaintiff also told the captain that Plaintiff did not need his authorization to continue acting as a jailhouse lawyer. This went on for a while, and finally Cartrette told Lt. Jones to write Plaintiff up for "group demonstration" and to separate Plaintiff from his cellmate. Plaintiff subsequently submitted a request to staff, in which Captain Cartrette responded, in writing: "You continued to be loud and boisterous during the course of the conversation and your statements were made in front of other inmates. Your effort to undermine staff authority in the presence of other inmates will not be tolerated and to limit your disruptive activity, you were subsequently moved to [a] tier in the unit with fewer inmates to reduce the exposure of your antics."

Plaintiff complains that Defendants Ma'at and Bowe are liable for violating Plaintiff's rights because they stood by and listened to Cartrette "misstating" the law and did not stop him.

Plaintiff also complains that the rule allowing an inmate to purchase only one book of stamps per commissary date is unconstitutional per se because "*any* BOP policy/regulation that infringes upon constitutional rights is invalid."

### Law and Analysis

**I. Screening**

When a prisoner sues an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983 or <u>Bivens</u>, the court is obliged

to evaluate the complaint and dismiss it without service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.§§ 1915 and 1915A.

A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998).

Nevertheless, in order to be afforded the benefits of this assumption, a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Ashcroft v. Iqbal, 556 U.S. 662 (2009)(A court should begin its analysis by "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); see also Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

4

A district court is bound by the allegations in a plaintiff's complaint and is not free to speculate that the plaintiff might be able to state a claim if given yet another opportunity to add more facts to the complaint. <u>Macias v. Raul A. (Unknown) Badge No. 153</u>, 23 F.3d 94, 97 (5th Cir. 1994).

Courts are not only vested with the authority to dismiss a claim based on an indisputably meritless legal theory, but are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. See <u>Neiztke v. Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Plaintiff has filed an original complaint, an amended complaint, and multiple other letters, exhibits, and documents for filing into the record. He has succinctly stated his claims for relief, and further amendment would serve no useful purpose.

**II.  Separate Complaints**

First, Plaintiff purportedly filed the complaint on behalf of himself and another inmate. According to Western District of Louisiana Local Rule 3.2, each pro se prisoner shall file a separate complaint or petition. It is then up to the Court to determine whether the inmates are asserting the same claim arising out of the same set of facts.

**III. Conditions of Confinement - Haircuts**

Plaintiff complains that he had been waiting an unspecified

amount of time to receive a haircut, but not as long as other inmates in the SHU, who had been waiting one month. Complaints about prison conditions are analyzed under the Eighth Amendment, which proscribes cruel and unusual punishment. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. To establish a constitutional violation due to conditions of confinement, an inmate must show (1) that prison officials deprived him of "the minimal civilized measure of life's necessities;" and (2) that the prison officials acted out of indifference to the inmate's health or safety. Herman v. Holiday, 238 F.3d 660 (5th Cir. 2001). "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted).

"For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be 'cruel and unusual' under contemporary standards." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Id. However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose

constituting cruel and unusual punishment under the Eighth Amendment. <u>Bradley v. Puckett</u>, 157 F.3d 1022, 1025 (5th Cir. 1998).

Plaintiff's complaint simply does not rise to the level of Eighth Amendment violations. He had go approximately one month without a haircut. To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities...'" <u>Alexander v. Tippah County</u>, 351 F.3d 626, 630 (5th Cir. 2003) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 581 (5th Cir. 1995)). Plaintiff was not deprived of one of life's necessities, nor did he suffer any harm. See <u>Siglar v. Hightower</u>, 112 F.3 191, 193-94 (5th Cir. 1997); <u>Alexander v. Tippah County, Miss</u>, 351 F.3d at 630-31; <u>Luong v. Halt</u>, 979 F.Supp. 481, 486 (N.D.Tex. 1997). Plaintiff has alleged no more than inconvenience with respect to his conditions of confinement claim, which is insufficient to state a claim for which relief may be granted.

## IV. First Amendment

The right of access to courts assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. <u>Lewis v. Casey</u>, 518 U.S. 343, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996); <u>Norton v. Dimazana</u>, 122 F.3d 286, 289 (5th Cir. 1997). The right is not unlimited, however, and includes "only a reasonable

7

opportunity to file non-frivolous legal claims challenging [the prisoners'] convictions or conditions of confinement." Lewis v. Casey, 518 U.S. at 351. In order to prevail on an "access to courts" claim, a plaintiff must allege facts to establish that he suffered some prejudice as a result of the deprivation. See Lewis v. Casey, 518 U.S. at 350-355; Richardson v. McDonnell, 841 F.2d 120, 122 (5th Cir. 1988).

Plaintiff has not presented allegations indicating that he was personally denied access to the courts. Although he complains about a prison rule allowing an inmate to purchase only one book of stamps per commissary date, this fails to state a constitutional claim. First, rules limiting the number of stamps that an inmate can purchase or possess have been upheld as constitutional, as they are directly related to the legitimate security interest of eliminating the exchange of contraband among inmates.[2] Additionally, Plaintiff *was* allowed to purchase the necessary number of stamps to mail legal documents; he just wasn't allowed to possess the stamps in his cell. He had to leave the stamps with an officer. Plaintiff does not allege that he suffered any actual

---

[2]See, e.g., Davidson v. Mann, 129 F.3d 700 (2d Cir. 1997) (upholding challenge to limit of purchase of 100 stamps a month on the grounds that stamps could be used as currency, causing disruptions); Van Poyck v. Singletary, 106 F.3d 1558 (11th Cir. 1997) (prison regulation prohibiting an inmate from receiving more than 15 stamps from persons outside of prison, and from possessing more than 20 stamps at any one time, did not violate the First Amendment); Pacheco v. Comisse, 897 F. Supp. 671 (N.D. N.Y. 1995) (upholding prison regulation which prohibited inmates from receiving stamps directly through the mail; court emphasized that the regulation was reasonably related to legitimate security concerns since stamps could be used as form of currency between inmates).

injury from the postage stamp restriction. In the case before the Court, Plaintiff had sufficient stamps to mail over twenty documents to the clerk of court within a seven month period. Clearly he has not been prejudiced by the policy.

Next, Plaintiff claims that he has a right under the First Amendment to assist other inmates with their legal claims. This is incorrect. It is well established that inmates have a constitutional right of access to the courts. See Tighe v. Wall, 100 F.3d 41, 42-43 (5th Cir. 1996). This right entitles inmates to receive legal assistance from fellow inmates unless prison officials provide reasonable alternative assistance. In the absence of reasonable assistance, "[j]ailhouse lawyers have standing to challenge official action that prevents them from assisting other prisoners." There is, however, no right to be or to receive legal assistance from a jailhouse lawyer independent of the right of access to the court. See id (citations omitted). In this case, Plaintiff was not even assigned to a jailhouse lawyer position. He simply took it upon himself to "assist" other inmates in litigating their claims. Plaintiff's argument is, essentially, that other inmates were deprived of his legal assistance. Inmates have no right to a particular prisoner's help in legal matters, nor does a prisoner have a constitutional right to assist other inmates as inmate counsel. See id.

To the extent that BOP regulations allow Plaintiff to assist

other inmates in filing claims, Plaintiff's argument still fails. A violation of prison regulations in itself is not a constitutional violation. See Jackson v. Cain, 864 F.2d 1235, 1251 (5th Cir. 1989). Plaintiff has not presented a viable claim for the violation of his First Amendment rights.

**V.    Transfer**

To the extent that Plaintiff complains about being transferred to another prison, his claim fails. A prisoner has no constitutional right to be housed in a particular facility. Olim v. Wakinekona, 461 U.S. 238, 244-46 (1983); see also 18 U.S.C. §3621(b)("The Bureau [of Prisons] may at any time... direct the transfer of a prisoner from one penal or correctional facility to another."). The transfer of a prisoner from one prison to another does not impose atypical or significant hardships in relation to the ordinary incidents of prison life and, thus, it is not actionable as a deprivation of constitutionally protected liberties. Olim, 461 U.S. at 245-46; Sandin v. Conner, 515 U.S. 472, 484 (1995).

To the extent that Plaintiff claims that he was transferred in retaliation for helping inmates with their claims, his claim also fails. As stated in Tighe, *supra*, Plaintiff has no right to act as inmate counsel; therefore, he has failed to allege the violation of a constitutional right that could support a retaliation claim.

## VI. New Facility

Any complaints Plaintiff has with his present institution of confinement, he must raise in the proper jurisdiction and venue, which is not with this Court.

### *Conclusion*

Accordingly, **IT IS RECOMMENDED** that Plaintiff's claims be **DENIED** and **DISMISSED** with prejudice for failing to state a claim for which relief can be granted.

**Under the provisions of 28 U.S.C. §636(b)(1)© and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed.**

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** <u>Douglas</u>

**v. United Services Automobile Association**, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 24th day of October, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE